



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

NOV - 3 2014

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

DONALD PAYNE, JR., and §
STEPHANIE TAYLOR, individually §
and on behalf of her minor §
children, GRADY PAYNE and §
M.D.T., §
§
                Plaintiffs, §
                Counter-Defendants, § NO. 4:14-CV-473-A
§ (Consolidated with
VS. § NO. 4:14-CV-596-A)
§
GREGORY SCOTT BAKER, §
§
                Defendant, §
                Counter-Plaintiff. §

## MEMORANDUM OPINION
and
### ORDER

Before the court for decision is the partial motion to
dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil
Procedure and supporting appendix, filed in the above action by
defendant, Gregory Scott Baker. Plaintiffs, Donald Payne, Jr.
("Donald") and Stephanie Taylor ("Taylor"), individually and on
behalf of her minor children, Grady Payne ("Grady") and M.D.T.
(collectively, "plaintiffs"), filed a response. Having
considered the parties' filings, plaintiffs' amended complaint,
and the applicable legal authorities, the court concludes that
the motion should be denied as to plaintiffs' defamation claim,

but granted as to plaintiffs' assault and intentional infliction of emotional distress claims.

I.

## Background and Plaintiffs' Pleaded Claims

Plaintiffs initiated this action by the filing of their original petition and application for temporary restraining order in the District Court of Tarrant County, Texas, 236th Judicial District.  Following removal, the court ordered plaintiffs to file an amended complaint that complied with the requirements of the Federal Rules of Civil Procedure, as interpreted by the United States Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).[1] Plaintiffs then filed their first amended complaint, in which they alleged the following:

Taylor and defendant were involved in a romantic relationship and engaged to be wed.  Throughout the course of their relationship, defendant gave the following gifts to Taylor and her children: (1) two 2014 Chevrolet Silverado 3500 4WD Crew Cab LTZ trucks to Donald and Grady; (2) a horse trailer to

---

[1] Defendant filed a contemporaneous complaint against Taylor and Donald in the Western District of Oklahoma.  That action was subsequently transferred to the Northern District of Texas and consolidated with the instant action.  The court then ordered plaintiffs to file an amended complaint reflecting consolidation.

2

Donald; and (3) two Honda four-wheelers to Taylor and M.D.T.[2]  In January of 2014, Taylor learned that defendant's adult son allegedly assaulted M.D.T. and informed defendant, who told her that "it will be bad for [her] entire family" if she mentioned the alleged assaults to anyone else.  1st Am. Compl. at 4, ¶ 12. Taylor became concerned for the safety of herself and her children, and the relationship between defendant and Taylor soon ended.  Thereafter, defendant threatened Taylor and her children, and demanded the return of the two gifted trucks.

Afraid for their safety, Donald and Grady complied and returned the trucks to defendant in Tarrant County, Texas. Defendant sold the trucks without authorization from Donald, Grady, or Taylor, although the trucks were the property of Donald and Grady.  After selling both trucks, defendant then engaged in more threats and demanded Taylor return the two Honda four wheelers.  Taylor did not comply and retained both four wheelers.

Later, Donald entered into an agreement with a trailer company to sell the horse trailer that belonged to him and to which he held title.  The company sold the trailer on Donald's

---

[2] The amended complaint alleged that defendant conveyed title on one of the trucks to Donald but retained title on the other as Grady was a minor at the time.  Defendant also allegedly conveyed title on the horse trailer to Donald.  There is no mention in the amended complaint of title for the four wheelers.

behalf.   After learning of the sale, defendant sent a demand letter to the brokering trailer company instructing that he would sue if payment were released to Donald.   In addition, defendant sent two men to Taylor's house to "stalk, harass, and frighten" Taylor and her children for "several" days.   Id. at 4-5 ¶ 21. The men parked in front of Taylor's house and watched and photographed Taylor and her children.   The men also told Taylor's neighbors that she had stolen defendant's property and they were there to retrieve it.

Plaintiffs alleged claims and causes of action against defendant for conversion; promissory estoppel; tortious interference; assault, threat of bodily injury; intentional infliction of emotional distress ("IIED"); declaratory judgment for the proceeds of the trailer sale and the four-wheelers; and for exemplary damages and injunctive relief.

The motion to dismiss sought dismissal of plaintiffs' claims of defamation, assault, and IIED.

II.

### Standards Applicable to Motion to Dismiss

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standard of pleading. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief,"

4

Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555. Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action. Id. at 555 & n.3. Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. See Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.") .

Moreover, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the facts pleaded must allow the court to infer that the plaintiff's right to relief is plausible. Id. at 678. To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. Twombly, 550 U.S. at 566-69. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

5

III.

## Application of Law to Facts

A.   <u>Defamation Claim</u>

"Defamation is a false statement about a plaintiff published to a third person without legal excuse which damages plaintiff's reputation." <u>Moore v. Waldrop</u>, 166 S.W.3d 380, 384 (Tex. App.--Waco 2005, no pet.). Whether a published statement is defamatory is initially a question of law for the court's determination. <u>Turner v. KTRK Television, Inc.</u>, 38 S.W.3d 103, 114 (Tex. 2000). To make such a determination, the court will consider how a person of ordinary intelligence would receive the statement as a whole, and "whether the words used are reasonably capable of defamatory meaning." <u>Robertson v. Southwestern Bell Yellow Pages, Inc.</u>, 190 S.W.3d 899, 902 (Tex. App.--Dallas 2006, no pet.) (citation omitted).

To constitute slander per se, a defamatory oral statement must either: (1) impute a crime; (2) impute a loathsome disease; (3) injure a person's office, business, profession, or calling; or (4) impute sexual misconduct. <u>Fiber Sys. Int'l, Inc. v. Roehrs</u>, 470 F.3d 1150, 1161 (5th Cir. 2006) (citing <u>Gray v. HEB Food Store No. 4</u>, 941 S.W.2d 327, 329 (Tex. App.--Corpus Christi 1997, writ denied)). Defendant maintained that dismissal of plaintiffs' defamation claim is warranted because statements that

a person is a crook do not impute the commission of a crime and, therefore, are not slander per se.  Thus, defendant continued, calling Taylor a "thief" did not constitute a defamatory statement.

Under Texas law, general accusations are not enough to impute a crime.  Instead, there must be "a statement that 'unambiguously and falsely imputes a criminal conduct to' a party."  Fiber Sys. Int'l, 470 F.3d at 1161.  As defendant correctly noted, calling someone a "crook" does not unambiguously and falsely impute criminal conduct to that person.  Id.  Under Texas law, however, accusing an individual of stealing property is consistent with calling the person a thief.  "Texas case law firmly establishes that falsely accusing someone of stealing or calling someone a 'thief' constitutes defamation per se."  Fiber Sys. Int'l, 470 F.3d at 1162 (emphasis added).

Here, Taylor did not allege that defendant called her the more generalized "crook."  Instead, Taylor alleged that defendant's agents told her neighbors that Taylor "had stolen property" and they were there to retrieve it.  1st Am. Compl. at 5 ¶ 22.  Such is sufficient under Texas law to state a claim for defamation.  Accordingly, Taylor's allegation that defendant accused her of stealing "raise[s] a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  Hence,

7

defendant's motion to dismiss plaintiffs' defamation claim
pursuant to Rule 12(b)(6) must be denied.

B.  <u>Assault Claim - Threat of Bodily Injury</u>

Under Texas law, assault occurs when a person "intentionally
or knowingly threatens another with imminent bodily injury,
including the person's spouse."  Tex. Penal Code § 22.01(a)(2)
(West 2013).[3]  "The gist of the offense of assault, as set out in
Section 22.01(a)(2), is that one acts with intent to cause a
reasonable apprehension of imminent bodily harm (though not
necessarily with intent to inflict such harm)."  <u>Tidwell v.</u>
<u>State</u>, 187 S.W.3d 771, 775 (Tex. App.--Texarkana 2006, pet.
stricken).  Defendant argued that plaintiffs' assault claim
should be dismissed because plaintiffs cannot make the required
showing as to the immediacy element.  The court agrees.

For the purposes of assault, imminent means "'[n]ear at
hand; mediate rather than immediate; close rather than touching;
impending; on the point of happening; threatening; menacing;
perilous.'"  <u>Neagle v. State</u>, 91 S.W.3d 832, 834 (Tex. App.--Fort
Worth 2002, pet. ref'd) (quoting <u>Black's Law Dictionary</u> 750 (6th
ed. 1990)).  Said differently, threat of injury is "imminent" if

---

[3] Texas courts use the same definition for assault in criminal and civil cases. <u>City of Watagua v. Gordon</u>, 434 S.W.3d 586, 586-90 (Tex. 2014). This can cause some confusion, however, as "the Texas Penal Code combines common-law concepts of assault and battery under its definition of 'assault.'" <u>Id.</u> at 589. To be clear, it is "[t]he statute's second alternative definition [that] mirrors the traditional notion of common-law assault." <u>Id.</u> at 590; <u>see also</u> Tex. Penal Code § 22.01(a).

it is "near at hand" or "on the verge of happening." <u>Devine v.</u>
<u>State</u>, 786 S.W.2d 268, 270 (Tex. Crim. App. 1989); <u>Hill v. State</u>,
844 S.W.2d 937, 938 (Tex. App.--Eastland 1992, no pet.).

In the amended complaint, plaintiffs alleged that defendant
made multiple threats towards Taylor and her children, both
verbally and in writing.  While plaintiffs repeatedly referenced
general "threats," only two actual instances were mentioned: (1)
defendant verbally stated that "it will be bad for [Taylor's]
entire family" if she told anyone about the alleged assault on
M.D.T., 1st Am. Compl. at 4 ¶ 12; and (2) defendant communicated
to Taylor in writing that "he was sending Mexicans to get back
the dental work from her mouth." <u>Id.</u> at 6 ¶ 38.  Neither
contains the temporal immediacy required to prevail on an assault
claim.

To begin with, defendant's statement that "it will be bad
for [Taylor's] entire family" was too vague and nebulous to imply
any threat of imminent bodily harm. <u>See</u> <u>Cox v. Waste Mgmt. of</u>
<u>Tex., Inc.</u>, 300 S.W.3d 424, 440 (Tex. App.--Fort Worth 2009, pet.
denied) (explaining that defendant's threats that "he would find
[plaintiff] wherever [plaintiff] went and that [plaintiff's]
expressed happiness made [defendant] 'want to hurt him'" were
threats of future harm under the assault standard and not
imminent).  In addition, defendant's alleged threatening note,

9

without more, was too attenuated to present a threat of present harm.  See Tidwell, 187 S.W.3d at 774 (finding that defendant's threat to kill a police officer while he was handcuffed "only constitute[d] a threat of future harm which might occur after the defendant was released from jail, and did not present an 'imminent threat'").  That defendant allegedly later sent two men to recover property does not retroactively establish that he intended "to cause a reasonable apprehension of imminent bodily injury."  Id.

Because plaintiffs failed to allege any facts supporting that defendant intentionally or knowingly threatened them with imminent bodily harm, they cannot sustain a claim of assault against him.  Accordingly, defendant's motion to dismiss plaintiffs' assault claim pursuant to Rule 12(b)(6) is granted.

C.   Intentional Infliction of Emotional Distress Claim

Defendant argued for dismissal of plaintiffs' IIED claim because plaintiffs merely recited the claim's elements and failed to allege any extreme or outrageous conduct.  In Texas, to prevail on a claim of IIED, a plaintiff must establish that: (1) the defendant acted intentionally or recklessly; (2) the alleged conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting

emotional distress was severe.  Hoffmann-La Roche, Inc. v. Zeltwanger, 144 S.W.3d 438, 445 (Tex. 2004).

"It is for the court to determine in the first instance whether conduct is extreme and outrageous." Creditwatch, Inc. v. Jackson, 157 S.W.3d 814, 817 (Tex. 2005).  Claims of IIED are submitted to the jury only when "reasonable minds may differ." Id.  Conduct reaches this threshold when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Zeltwanger, 144 S.W.3d at 445.  Conduct that is insensitive or rude, or that is comprised of "mere insults, indignities, threats, annoyances, petty oppressions, and other trivialities" is not considered extreme and outrageous.  GTE SW., Inc. v. Bruce, 998 S.W.2d 605, 612 (Tex. 1999).

Here, plaintiffs argued that defendant's conduct caused them "severe emotional distress," including "embarrassment, grief, shame, and humiliation."  Reactions such as these, however, are insufficient to support an IIED claim under Texas law.  See id. at 618.  In Texas, "[s]evere emotional distress is distress that is so severe that no reasonable person could be expected to endure it." Id.  Nothing in the amended complaint describes the ways in which defendant's conduct has caused plaintiffs "severe

emotional distress."  Instead, plaintiffs have alleged only the type of "highly unpleasant mental reactions" that Texas courts have concluded are insufficient to sustain a claim of IIED.  See id.

Additionally, the court concludes that the conduct of which plaintiffs complain is not of the type that Texas courts have found to be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Zeltwanger, 144 S.W.3d at 445.  The court also must bear in mind that the fact that an action is intentional or malicious does not make it sufficiently extreme or outrageous to sustain an IIED claim.  Brewerton v. Dalrymple, 997 S.W.2d 212, 215 (Tex. 1999).

Defendant's conduct, taken as true for purposes of the motion to dismiss, cannot be condoned, and may be considered inappropriate, insensitive, mean-spirited, inconsiderate, ill-advised, or a number of other negative things.  However, at most, the amended complaint alleged a few, fairly isolated instances of bad conduct by defendant.[4]  The only action alleged in the

---

[4]Plaintiffs initiated this action in state court on May 28, 2014, and filed the amended complaint on August 26, 2014. The amended complaint included no new allegations of offensive conduct by defendant that occurred in that three-month period. Presumably, had defendant's conduct continued, plaintiffs would have amended their factual allegations to include a description of his most recent

(continued...)

amended complaint that, in the court's view, could even approach the high standard required for an IIED claim are the two men sent to sit outside plaintiffs' home. Although plaintiffs alleged the men were sent to "stalk, harass, and frighten" them, there are no allegations that the men spoke to plaintiffs, approached them, confronted them, stepped onto plaintiffs' property, or otherwise even came near them.

Taken as a whole, the court finds that the alleged conduct is consistent with that which Texas courts have found to fall below the "extreme and outrageous" threshold. See e.g., Jackson, 157 S.W.3d at 817-18 (former employer's conduct not extreme and outrageous where, after firing plaintiff, it forced a former coworker with whom the plaintiff was living to evict her); Gaspard v. Beadle, 36 S.W.3d 229, 237 (Tex. App.--Houston [1st Dist.] 2001, pet denied) (attorney's conduct not extreme and outrageous where he engaged in a lengthy sexual relationship with a client while the attorney represented the client and her husband in a divorce, participated in her family outings, then upon ending the relationship, billed her for legal services he performed during the course of the relationship). Accordingly, plaintiffs' claim for IIED is dismissed.

------------------------------------------------------------

[4](...continued)
actions.

IV.

<u>Order</u>

Therefore,

The court ORDERS that defendant's partial motion to dismiss be, and is hereby, denied as to plaintiffs' claim for defamation, and be, is hereby, granted as to their claims for assault and IIED.

The court further ORDERS that plaintiffs' claims for assault and IIED be, and are hereby, dismissed.

SIGNED November 3, 2014.

JOHN McBRYDE
United States District Judge

14